1, 2, 7, 8. Daniel Grajales et al. v. Puerto Rico Ports Authority. Blessing, good morning to the court. May I respectfully request two minutes for rebuttal? Yes. May I please support? Good morning, your honors. The main reason for which we're here is to clarify or perhaps further establish what has been established in this circuit back in 1992 under the case of Royal Caribbean, which is whether or not, in this case, the corporation, the Puerto Rico Port Authority, is or not an arm of the state under the 11th Amendment. We have a case from Sister Circuit, DC Circuit, which indicates that it is. However, this circuit expressly noted under the case of Royal Caribbean that the Port Authority is not an arm of the state. Now, pursuant to the analysis under HES, which granted did come after the Royal Caribbean case, the fact of the matter is that if we look at the analysis done by this circuit under Royal Caribbean, it in fact goes into the specific prongs which are not being utilized pursuant to the HES decision. Primarily of our interest is whether or not the statute, the enabling statute, did intend for this corporation to have a life of its own. And we submitted in our briefs pursuant to Title 23 of the Laws of Puerto Rico under 333 and concluding that, in fact, that corporation has a life of its own. It has the ability to sue and be sued. It has the ability to raise funds by way of the selling of bonds. Could you just talk about how your account fits with the Prince case? Under the, in our account, specifically speaking, the statute enabling the Puerto Rico Port Authority is very specific to the extent that it does several issues. One, it indicates that it is enabled to act on its own completely dependent on the… Prince case says it was an arm of the state. So you keep saying Royal Caribbean, I get it. Okay. But one, Royal Caribbean said it's an arm of the state, not an arm of the state for proprietary activity. Right. Prince says it is an arm of the state for governmental activity. Both of them are talking about the Docks and Harbor Act. We're not talking about the Docks and Harbor Act. We're not. And I think, Your Honor, that hits me on the head to the extent that Prince and Prince Federal specifically goes to a different chapter under Title 23, going to the Docks and Harbor Act. But isn't that true under Royal Caribbean also? Isn't that the Docks and Harbor Act also? That's correct. Okay. So we've got two Docks and Harbor Act cases. Right. One says it's an arm of the state for governmental. One says it's not for proprietary. Now we have a non-Docks and Harbor Act case. What are we supposed to do? Well, again, in doing the analysis, ultimately there is nothing impeding this Court from simply concluding that under our present situation, this is not an arm of the state. The Governor appoints the members of the authority. That is correct, Your Honor. And they're removable at will? That is correct, which addresses the first problem under the first analysis of the intent for the structure of the corporation. However, if we proceed to the three following steps, we see that the intent sways the other way. In other words to say it's not an arm of the state because it's not placing the state funds in peril. It has the ability to sue and be sued. It has the ability to raise its own funds. So if we were to make an issue at the best for the appellee in this case would be under that first prong that in fact the Governor has the ability to name members of the Board. But even that, in looking at our case from the Supreme Court, it defined that that was not necessarily applicable versus reaching that conclusion. In other words, as if to say, look, and this is addressing Hess, any entity created by the Government, it's by its own definition a creation of the Government. The Government has the ability to create it, to alter it, or ultimately do away with it. But if we go into the nuts and bolts of what the analysis has to be done here, and in taking that first prong, we see that, like I indicated earlier, at best that would be the only argument they can make to state that it is in fact an arm of the state. We submit it is not, even under our, and when considering the subsequent prongs under the first, I'm sorry, the subsequent points under the first prong. Does that mean we have to overrule Prince? If the Court wants to look at it. I don't want to do anything. I just want to know what you think. I would say yes. I would say yes to the extent that again, and the problem we have with the other cases that have been cited from this case, in the Prince case, is that in my assessment, it fails to excruciatingly analyze how it is that this entity was created. And that's where you need to go at it. That's why I indicated that in Royal. In Prince and in Royal Caribbean, they seem to suggest that we should focus on the nature of the activity, the function being performed, that grounds the lawsuit. They said if it's proprietary activity, no immunity. If it's a governmental activity like a licensing, then there is immunity. In this case, you haven't said anything as far as I can tell from the brief about how to classify this activity that's grounding the lawsuit. If we thought that our precedent, if I thought the precedent made that relevant, what the nature of the activity was, how are we supposed to classify it? In that case, you're looking at the underlying facts. We're talking about an employee of the authority who at the time of the alleged acts was working at an airport. So in that regard, I believe it's proprietary because you have the port authority. It's proprietary. It's proprietary, correct. Wasn't he engaged in a regulatory activity? I beg your pardon? Wasn't he engaged in a regulatory activity? For purposes of his specific task, yes. Yes, that is correct. But speaking specifically as to the authority itself, which is the employee here, my understanding is it would have been regulatory to the extent that, again, it is a corporation which is overseeing, in this case, the airport. It is imposing fees, essentially running the show or administrating this port of entry into Puerto Rico. So in that sense, it's regulatory. Furthermore, under the second prong, our position is that there is no effect on the FISC. Appley likes to raise the issue that under the Docks and Harbor, it is, but like I indicated earlier, we're talking about two separate statutes. Under Title 23, we have the Enabling Act, and under Hess and the subsequent case, it specifically tells us we need to look at the Enabling Statute. Docks and Harbors is not the Enabling Statute. If the legislator wanted it to apply, it would apply it under 23 BIC 366. Am I right that even under the Docks and Harbor Act, the Commonwealth is never liable in federal court? They haven't waived their federal court immunity. If I understand what's going on in the Docks and Harbor Act, they've just said they consent to liability in the Commonwealth courts. They consent to liability, correct. So they're not at risk of an adverse federal judgment ever? As it stands right now, no. I agree. Thank you. One quick question before you step down. This case could have been brought in the courts of Puerto Rico? It could have been. Was a companion suit filed? It was not. However, a suit under the local OSHA statute was filed. And is it still pending? It's pending. Okay. Thank you. Is it state? Yeah. Is it state pending the outcome here? Not. Honestly, I can't answer that. And as far as I know, no. But I'm not absolutely sure about that. Okay. Thank you. Good morning, Your Honors. I would like to first address how appellants seem to suggest that our argument on the first prong, which is sufficient to decide the analysis if the court is satisfied that state sovereign dignity is implicated. Can I ask you a quick question before you get into that? Yes. Do you agree this case could be brought in the courts of Puerto Rico? Definitely. And if there is an action, similar action, pending in the Puerto Rican courts, that could go forward even if we agree with your position? Well, as I understand it, and I'm not counseling the state court action, so I have very limited knowledge. I believe that our counsel is in the same situation. There's different attorneys in that action. From what I understand, the action in state court is under a different statute that that implicated in this case. So it's not exactly the same. Last question, and I'll let you get on. Would you agree, if we agree with you on the 11th Amendment issue, that the time spent on this case in federal court equitably tolls any statute of limitations in the courts of Puerto Rico? Well, Your Honor, I believe that under the Board of Regents of the University of Minnesota Supreme Court decision, the filing of a federal case where there's no federal jurisdiction does not toll ordinarily a statute of limitations. And if the court decides this on 11th Amendment grounds, it would mean that under the 11th Amendment the district court had no jurisdiction to hear this case in the first place. Go ahead. Your Honor, the Ports Authority is much more tied to the Commonwealth of Puerto Rico in its governance than just the governor appointing its members, four of which are cabinet members of free removal, and the other one, the citizens' representative may be removed for cause by the governor. But also, this is an agency that has to render financial reports on a yearly basis to the Puerto Rico legislature. It's audited by the Comptroller of Puerto Rico. It's subject to the Puerto Rico Administrative Procedures Act. Accountability is different than culpability, isn't it? Yes, it is. So the fact that you report financials to the government that creates you, that's nothing unusual. It doesn't implicate the state's coffers. Well, 11th Amendment jurisprudence looks at governance issues, how much you are dependent upon the state. And as a matter of fact, as it is stated in our brief, the government retains the authority to intervene in financial affairs of the Puerto Rico Ports Authority in terms of the debt that is emitted by the authority where the Commonwealth understands that the authority's actions are endangering recovery by the bondholders and investors. But it can refuse to intervene also, isn't that correct? Yes, but it does have the authority to intervene, which suggests control. But that was true in Royal Caribbean, too. Yes. So are you saying Royal Caribbean needs to be overruled? Well, what I'm saying is that when Royal Caribbean was decided in 1992, the Supreme Court had not yet stated that dignity is paramount in the 11th Amendment analysis. But Hess says that if at the first structural stage factors point in different directions, we're supposed to then look at the impact on the state federal FISC, right, whether there's a risk to the Commonwealth FISC. Correct. So at the first stage, we just are asking, following Hess and Fresenius, do the factors point in different directions? Royal Caribbean held they did. So what's changed? I don't understand. Why doesn't that precedent survive? It says as the structural factors, they point in a bunch of different directions. Under Hess and Fresenius, that seems to me to suggest we then look at would there be an adverse effect from a federal judgment on the Commonwealth FISC. Here, the answer is no. Well, Your Honor, we believe that under the Adducts and Harbors Act, the answer is yes. Not from a federal judgment. Yeah, but still, the analysis goes to how much the state is committing. Is there any case that suggests that when they talk about the state FISC being at risk on that second prong, they mean not at risk from a federal judgment? Well, every case that I've seen, what they're talking about is would the state be at risk from an adverse federal judgment, not would it be at risk from a judgment in its own courts. That's just the amount of money that the state chooses to contribute, like an appropriation or anything else. Well, but then again, that commitment can also be analyzed under the first prong, because the Commonwealth is actually sharing its immunity under state law with the courts authorities. In a limited way. Yeah, because if it's sued in the state courts, the Commonwealth has a, it cannot be sued for intentional actions. There's a limitation of liability. But that's what I'm saying. That just would seem to be part of the structural analysis. That's one way in which it shares, but it's decided to share it in a very limited respect. In a limited set of suits, in a limited set of circumstances, subject to a damages cap. And then you'd say from that, as a structural matter, we have to conclude that it per se is an arm of the state, and we have to overrule Royal Caribbean? Well, yes. As a matter of fact, as these matters have been analyzed in cases coming after Royal Caribbean, which is decided in 1992, if I remember correctly, for instance, plaintiff relies heavily in Hess. The bulk of the decision in Hess, the force authority involved was a compact between the state of New Jersey, the state of New York, that was approved by Congress under federal legislation. So there's very little dignity and sovereignty that is retained by two states that enter into a compact under federal law to push forward a national interest. More recently, in the FMC reports of South Carolina authority case, which was decided 10 years after Royal Caribbean in 2003, the fact that a state-controlled force authority, that of South Carolina, was an arm of the state was a foregone conclusion. What the Supreme Court focused on in that case was solely whether or not the 11th Amendment could extend it to administrative proceedings before the Federal Maritime Commission. So, and as a matter of fact, in the case involving the Puerto Rico Force Authority, the D.C. Circuit case, the 2008 case, FMC versus Puerto Rico Force Authority case, the court recognizes that since dignity is paramount and the analysis have been reshaped that way in the emphasis that it's given, given the fact that under Puerto Rico law, force authority property is decreed as a property of public domain and that emphasis is made that this is an agency or an entity that administers the ports of Puerto Rico for the benefit of the people of Puerto Rico is sufficient under the first prong. As a matter of fact, the D.C. Circuit only goes to a second prong as a matter of even if we had to go to a second prong, there's still a second prong. But Fresenius, which is actually binding on us, unlike the D.C. Circuit opinion, does not say that. It says we should be cautious about finding something to be an arm of the state. It says that even though there's no presumption against it outside the bi-state compact situation, we are supposed to apply the Hess test, and it says that when there is factors pointing in different directions, you have to look at whether the most critical factor is the risk to the state FISC. Isn't that what Fresenius says? And then after Fresenius, we have another case saying our prior precedent, which includes Royal Caribbean, is if not binding, still controlling because the test didn't fundamentally change. Even though the D.C. Circuit clearly has a different view, that's not the First Circuit view as I read it. Am I wrong? No. Definitely, although the D.C. Circuit analyzes the case under Fresenius, that is the authority that they invoke when they make their analysis. They don't use D.C. Circuit authority or other circuit authority. They go to First Circuit authority. But we believe that- But they turned Fresenius' two-prong test into a three-prong test, so they didn't pay that much attention to it. You're saying it should be a one-prong test. Well, it is a one-prong test if factors don't point in different directions. And the only thing that plaintiff has been able to identify that points in the way of this being self-governing, independent, not an arm of the state entity, is the fact that it has authority to sue or be sued, which also the University of Puerto Rico has, and it is an arm of the state, that it is a public, self-standing corporation, same with the University of Puerto Rico and other public corporations from Puerto Rico that this court has found to be arms of the state. So- It doesn't get the same appropriations that Puerto Rico University got. No, nobody gets that. That's 10% of the general budget. That's a big difference. Yeah. But it does get a commitment from the- What I found unique about this corporation, the Ports Authority, is that under its Organic Act, the Commonwealth of Puerto Rico uses eminent domain and other faculties. It becomes a financer of real property for the Ports Authority, and it uses its eminent domain power, which a public corporation or a private entity lacks. Can I ask you one last question? If you were to classify the activity here, the function, as proprietary or governmental, do you have a position on that? The function- In other words, in Royal Caribbean, they say look at the function that gives rise to the lawsuit. They said there it was a proprietary activity. In Prince, they say look at the function, and they say there the activity was regulatory. There's no briefing here as to whether this is regulatory or proprietary. Well, in this case, the plaintiff was a person in charge of airport safety, which seems as regulatory as it gets in our view. Morning again. In answer to your question to both counsel, yes, there is another case. However, it doesn't encompass all of the elements which are encompassed in this case. That's very much limited to the OSHA issue in Puerto Rico. I would add this much. Judge Brown, you're absolutely correct to the extent, and that's what I presented in my brief. The D.C. Circuit is not only making a wrong analysis, but it's doing an incorrect analysis based on its premises to reach its conclusion. And, in fact, when we look at Fresenius, which is, at least to this day, the one case which guides us, we see in that opinion that it cites to Royal and specifically points to the fact that at the time, under Royal, the Puerto Rico Port Authority was concluded to not be an arm of the state pursuant to the 11th Amendment. And, certainly, we can't do a comparison with other corporations because Port Authority does not receive funds much like the University of Puerto Rico does or other corporations do. Is there any way to distinguish Prince without this Court just saying we got it wrong? Is there any way to distinguish it? In addition to saying it got it wrong, I would say this much. Prince makes the mistake of carrying out an analysis which is strictly based on the Doctrine and Harbors and interprets it in a way to fit it into the Enabling Act, which is incorrect because, pursuant to Fresenius and to Hess, we need to look at the Enabling Act, not a different statute, which is what they're doing in that case in the sense of looking at, oh, on the Doctrine and Harbors, well, the Commonwealth would be the party, ultimately, who would have to respond to the damages. That is not correct. That was never the intent of the legislature in Puerto Rico pursuant to the Enabling Act of the Port Authority. In addition to that, I would submit that pursuant to, again, Fresenius, particularly Fresenius, inciting into Royal, it provides guidance to this Court in terms of how we need to rule in this case pursuant to the applicable prongs. Thank you. Thank you, Your Honor. Have a good day.